**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

|  |  |
|---|---|
| ERIC MILLER, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>ELEVANCE HEALTH, INC., GAIL K. BOUDREAUX, FELICIA F. NORWOOD, MARK B. KAYE, and STEPHEN V. TANAL,<br><br>        Defendants. | No. 1:25-cv-00923-JRS-MJD |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION**
**TO DISMISS THE CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT .................................................................................................................................... 3

I.    The Opposition Does Not Salvage Any Alleged False or Misleading Statement From Dismissal. ............................................................................................................................. 3

    A.    Plaintiffs Cannot Escape the Reform Act Safe Harbor by Attempting to Turn Statements About Future Guidance Into Statements of Present or Past Fact. ........ 3

        1.    Plaintiffs' Argument That Elevance's Guidance-Related Statements Are Statements of the Past or Present Fails. ....................................................... 4

        2.    Plaintiffs' "Mixed Statement" Argument Fails. .......................................... 5

        3.    The Opposition Fails to Show That Defendants' Forward-Looking Statements Are Not Protected. .................................................................... 7

    B.    The Opposition Provides No Basis for Challenging Defendants' Opinion Statements and Corporate Puffery. ........................................................................... 8

II.    The Opposition Does Not Identify a Strong Inference of Scienter. .................................... 11

    A.    The Amended Complaint Does Not Offer Facts Sufficient to Show Actual Knowledge or Recklessness. ............................................................................... 11

    B.    Plaintiffs Cannot Rely on the Core Operations Doctrine. ..................................... 13

    C.    The Opposition Does Not Identify Suspicious Stock Sales. .................................. 13

CONCLUSION ............................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Livonia Emps.' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*,
    711 F.3d 754 (7th Cir. 2013) ......................................................................................8

*City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
    8 F.4th 592 (7th Cir. 2021) ........................................................................................3

*Das v. Rio Tinto plc*,
    332 F. Supp. 3d 786 (S.D.N.Y. 2018)........................................................................13

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
    336 F. Supp. 3d 196 (S.D.N.Y. 2018), *aff'd sub nom. Kapitalforeningen
    Lægernes Inv. v. United Techs. Corp.*, 779 F. App'x 69 (2d Cir. 2019) ...................3

*Fresno County Emps.' Ret. Ass'n v. comScore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017)........................................................................12

*Freudenberg v. E*Trade Fin. Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)........................................................................14

*Fryman v. Atlas Fin. Holdings, Inc.*,
    No. 18-cv-01640-FUV, 2022 WL 1136577 (N.D. Ill. Apr. 18, 2022) .............................14, 15

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
    63 F.4th 747 (9th Cir. 2023) ......................................................................................8

*In re HealthCare Compare Corp. Sec. Litig.*,
    75 F.3d 276 (7th Cir. 1996) ......................................................................................3

*Higginbotham v. Baxter Int'l, Inc.*,
    495 F.3d 756 (7th Cir. 2007) ....................................................................................11

*Hunter v. Elanco Animal Health Inc.*,
    No. 1:20-cv-01460-SEB-MG, 2022 WL 3445173 (S.D. Ind. Aug. 17, 2022) ...........3

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)....................................................................................................8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)................................................................................................8, 11

*Phoenix Ins. Co. v. ATI Physical Therapy, Inc.*,
    690 F. Supp. 3d 862 (N.D. Ill. 2023) .......................................................................11

*Pirani v. Netflix, Inc.*,
   710 F. Supp. 3d 756 (N.D. Cal. 2024) ......................................................................4

*Robeco Cap. Growth Funds SICAV - Robeco Glob. Consumer Trends v.*
   *Peloton Interactive, Inc.*,
   665 F. Supp. 3d 522 (S.D.N.Y. 2023) .................................................................3, 4

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ........................................................................................6, 8

*Van Noppen v. InnerWorkings, Inc.*,
   136 F. Supp. 3d 922 (N.D. Ill. 2015) .............................................................14, 15

*Wade v. Wellpoint, Inc.*,
   740 F. Supp. 2d 994 (S.D. Ind. 2010) ...............................................................3, 8

*Wade v. WellPoint, Inc.*,
   892 F. Supp. 2d 1102 (S.D. Ind. 2012) ..................................................................3

*Weston v. DocuSign, Inc.*,
   669 F. Supp. 3d 549 (N.D. Cal. 2023) ...................................................................8

**Statutes**

CFR § 240.10b5-1(c)(1)..............................................................................2, 13, 14, 15

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................2

Fed. R. Civ. P. 12(b)(6).............................................................................................2

## PRELIMINARY STATEMENT

Plaintiffs attempt to evade the Reform Act's safe harbor for forward-looking statements by arguing that Elevance's full-year 2024 forecast for Adjusted EPS – issued in January 2024 and tweaked in April 2024 – was not actually a forward-looking statement at all.  Specifically, Plaintiffs argue in their Opposition[1] that Elevance's forecast was not a forward-looking statement because, when issuing or tweaking the forecast, the Company stated that it had already considered and taken into account the financial impact of the (then-ongoing) Medicaid redetermination process.  This argument defies logic and common sense and does not pass the smell test.

During the COVID-19 pandemic, Elevance repeatedly disclosed that the suspension of the Medicaid redetermination process had a positive but temporary impact on the Company's financial performance.  When Congress lifted the suspension in 2023, Elevance promptly disclosed that it anticipated a decline in its Medicaid business.  And when Elevance issued the Adjusted EPS forecast at issue in this case, it expressly disclosed that there were "Medicaid membership headwinds included in our guidance" and that the Company expected to lose approximately 930,000 Medicaid customers over the course of 2024.

But the fact that Elevance included "Medicaid headwinds" in its Adjusted EPS forecast in January 2024 does not magically convert a full-year profits per share estimate into an actionable present-tense factual representation.  When Elevance set the Adjusted EPS forecast in early 2024, it did not know (and by definition could not have known):  (i) how many customers the states would ultimately determine were ineligible for Medicaid; (ii) whether those customers would be found to be ineligible for administrative reasons (*e.g.*, failure to file paperwork) or substantive

---

[1]    References to the "Opposition" are to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Corrected Consolidated Class Action Complaint, ECF No. 65.

reasons (*e.g.*, exceeding the statutory income limits); (iii) how successful Elevance would be in re-enrolling customers in Medicaid who were removed for administrative reasons; (iv) how successful Elevance would be in enrolling ex-Medicaid customers who were removed for substantive reasons into other Elevance products; and (v) the extent to which Elevance's post-redetermination Medicaid customers would actually utilize medical services over the course of 2024. Plaintiffs do not and cannot allege that Elevance had a crystal ball and knew the extent to which these factors would impact the Company's revenue, costs, and profits in 2024. This means, in turn, that Plaintiffs do not and cannot allege that the Adjusted EPS forecast was false (and knowingly so) when it was issued in January 2024 or tweaked in April 2024.

The balance of Plaintiffs' Opposition is largely irrelevant, but for completeness, Defendants note that the Opposition concedes that (a) none of Plaintiffs' former employees had any direct interactions with the Individual Defendants or any involvement with setting or tracking the Adjusted EPS forecast, and (b) the stock sales cited as support for motive occurred nearly six months before the alleged corrective disclosure, with one being made pursuant to a Rule 10b5-1 trading plan and the other at a price well below the class period high.

To state the obvious, the fact that Elevance ultimately underestimated the impact of the Medicaid headwinds does not mean that Elevance did not consider and take into account those headwinds when providing investors with the Adjusted EPS forecast. It just means that, in hindsight, the Company's initial forecast was too high. Congress adopted the Reform Act's safe harbor for forward-looking statements for the express purpose of prohibiting the filing of this exact case – a securities class action premised on an overly optimistic forecast. The Court should dismiss this action with prejudice pursuant to the Reform Act, Rule 9(b), and Rule 12(b)(6).

## ARGUMENT

I. **THE OPPOSITION DOES NOT SALVAGE ANY ALLEGED FALSE OR MISLEADING STATEMENT FROM DISMISSAL.**

A. **Plaintiffs Cannot Escape the Reform Act Safe Harbor by Attempting to Turn Statements About Future Guidance Into Statements of Present or Past Fact.**

In their moving papers, Defendants demonstrated that Elevance's Adjusted EPS forecast and related statements were forward-looking statements protected by the Reform Act's safe harbor. ECF No. 63 at 21–25. Nothing in the Opposition changes the Amended Complaint's core theory: that Elevance made false and misleading statements when it issued the Adjusted EPS forecast in January 2024 for the upcoming year and that the "truth" was "revealed" in July, when Elevance announced that it was observing increased utilization of Medicaid services, and in October, when it announced that Elevance's third quarter performance was below expectations. Courts in this Circuit and beyond regularly dismiss such "lowered" and "missed" forecast cases. *See*, *e.g.*, *City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592, 594–95 (7th Cir. 2021) (dismissing case following missed gross profit margin projection); *In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 283 (7th Cir. 1996) (reversing and remanding for dismissal based on finding that missed forecast contained tentative projections subject to revision); *Hunter v. Elanco Animal Health Inc.*, No. 1:20-cv-01460-SEB-MG, 2022 WL 3445173, at *20 (S.D. Ind. Aug. 17, 2022) (dismissing securities class action where defendant missed projections due to global dynamics triggered by COVID-19); *Wade v. WellPoint, Inc.*, 892 F. Supp. 2d 1102, 1138 (S.D. Ind. 2012) (dismissing case following lowered forecast); *Wade v. Wellpoint, Inc.*, 740 F. Supp. 2d 994, 1012 (S.D. Ind. 2010) (same); *see also Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196 (S.D.N.Y. 2018), *aff'd sub nom. Kapitalforeningen Lægernes Inv. v. United Techs. Corp.*, 779 F. App'x 69 (2d Cir. 2019) (dismissing case where lowered forecasts followed "overly optimistic market assumptions"); *Robeco Cap. Growth Funds SICAV -*

3

*Robeco Glob. Consumer Trends v. Peloton Interactive, Inc.*, 665 F. Supp. 3d 522 (S.D.N.Y. 2023) (dismissing case where a gap existed between sales forecasts and actual sales); *Pirani v. Netflix, Inc.*, 710 F. Supp. 3d 756 (N.D. Cal. 2024) (dismissing case where forecast was lower than previous year, then missed due to impact of COVID-19).  This case is no different.

### 1. Plaintiffs' Argument That Elevance's Guidance-Related Statements Are Statements of the Past or Present Fails.

Plaintiffs try to evade the Reform Act's safe harbor by arguing that the Amended Complaint contains three statements of past or present fact.  ECF No. 65 at 16–17 (citing ECF No. 60 at 39, 40, 41, ¶¶ 96, 99(b), 101).  Plaintiffs' argument fails, however, because Plaintiffs artificially isolate words and phrases from statements about Elevance's Adjusted EPS forecast, which is by definition forward-looking.  For example, Plaintiffs argue that a statement by Mr. Tanal on a June 12, 2024 earnings call that "nothing outside of the bounds of what we expected and guided for" is a present-tense statement.  ECF No. 65 at 16 (citing ECF No. 60 at 39, ¶ 96).  Mr. Tanal's statement, however, makes clear that he was discussing Elevance's Adjusted EPS forecast:

> In Medicaid, I would say, again, a range of outcomes as assumed in our guidance.  We knew that this would be a year where there was a lot of shifts happening in the risk pool.  We planned for that . . . very consistent again with what we talked about in Q1, specifically some pockets around acuity, but nothing outside of the bounds of what we've expected and guided for.  So feeling still comfortable there.

ECF No. 62-16, at 6.  The statement addresses the "range of outcomes" in the Adjusted EPS forecast as well as what Elevance planned, expected, and "guided for." *Id.*

Similarly, Plaintiffs assert that a statement by Mr. Kaye on a July 17, 2024 earnings call that Elevance's "full year outlook does allow for [the] shift in acuity and increase utilization" somehow constitutes a statement of present facts.  ECF No. 65 at 16–17 (quoting ECF No. 60 at 40, ¶ 99(b)).  On its face, however, this statement is forward-looking because it describes what the Adjusted EPS forecast allows for in the future.  Plaintiffs artificially focus on the present-tense

4

verb "does," but the statement would mean the exact same thing if a future tense verb had been used (*e.g.*, "the full year outlook will allow for the shift in acuity and increase utilization"). Plaintiffs cannot evade the Reform Act's safe harbor by cherry-picking individual present-tense words from a statement that on its face discusses the Company's future performance.

Finally, Plaintiffs cite a statement by Ms. Norwood on the same July 17, 2024 earnings call in which she stated that the "disconnect between the timing of our rates in the emerging acuity in our populations . . . [has] certainly been reflected in our updates for the year."  ECF No. 60 at 41, ¶ 101.  Again, even a cursory glance at the full statement defeats Plaintiffs' argument that the Reform Act's safe harbor does not apply:

> I will say that the conversations are ongoing.  We fully expect our rates to remain actuarially sound.  But we acknowledge the potential for a short-term disconnect between the timing of our rates and the emerging acuity in our populations, and that's certainly been reflected in our updates for the year.

*Id.*  The "updates" were updates to Elevance's forecast and the statement concerns Elevance's expectations as well as concerns about a **potential** disconnect – that is, one that could emerge in the future.  The full text of the statement confirms its forward-looking nature.

Plaintiffs' arguments here are a weak and transparent attempt to evade the Reform Act's safe harbor and provide support for a complaint that never should have been filed in the first place.

### 2.    Plaintiffs' "Mixed Statement" Argument Fails.

Plaintiffs also argue that some of Elevance's forward-looking statements are "mixed" statements that contain present or past elements that the Reform Act's safe harbor does not protect. ECF No. 65 at 18–19.  However, Plaintiffs fail to allege facts showing that the past- or present-tense portion of the purportedly "mixed" statements were false or misleading.  For example, in paragraph 109 of the Amended Complaint, Plaintiffs cite several statements made on an earnings call and then, in paragraph 110, allege that the statements were false because:

> Defendants knew at the time these statements were made that (i) redeterminations were already negatively impacting Elevance's Medicaid business; (ii) Elevance's Medicaid costs were exploding given that determinations were resulting in a dramatic shift towards higher cost patients; and (iii) Defendants' guidance and expectations did not account for the massive increase in Medicaid costs that Elevance faced, including because Defendants knew those relied on inaccurate data that did not include the increased costs.

ECF No. 60 at 44, ¶¶ 109–110. While Plaintiffs argue that paragraph 109 contains a "mixed" statement because the portion of the statement that reads "the margins this quarter were very much in line with our expectations" is a present-tense statement, paragraph 110 alleges no specific facts showing that Elevance's margins for the first quarter of 2024 were not in fact in line with Elevance's expectations. This lack of particularity falls short of the Reform Act's "[e]xacting pleading requirements." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007).

Plaintiffs' argument with respect to paragraph 123 suffers from the same flaw. Plaintiffs allege that the statement is not forward-looking because it says that "we're executing on the guidance," but nothing in paragraph 124 – the "reasons" paragraph supporting paragraph 123 that is identical to paragraph 110 – alleges facts showing that Defendants were not in fact executing on the guidance and working toward achieving the Adjusted EPS forecast. Plaintiffs' broad and generalized allegations do not satisfy the Reform Act's heightened pleading requirements.

Ultimately, Plaintiffs' "mixed statement" argument amounts to nothing more than artificial slicing and dicing of Defendants' statements in an attempt to magically convert Defendants' forecast-related statements into actionable present- or past-tense statements. Specifically, Plaintiffs identify the alleged false statements in paragraphs 99, 101, 107, 109, 112, and 123 as "mixed" statements. But the plain meaning and import of each statement, when read in full, addresses Defendants' intentions, plans, and goals for the future. The statements in paragraph 107, for example, were made in response to a question that expressly asked for Elevance's "view of

kind of how you expect that to gate out over the next several quarters[.]"  ECF No. 60 at 42–43,

¶ 107.  And the preface to Mr. Kaye's statement in paragraph 99 is "[w]ith respect to our outlook,"

a clear signal that Mr. Kaye is discussing future guidance.  *Id.* at 40, ¶ 99.

### 3.    The Opposition Fails to Show That Defendants' Forward-Looking Statements Are Not Protected.

Plaintiffs also argue both that Elevance's meaningful cautionary language was insufficient

to trigger Prong 1 of the safe harbor and that Prong 3[2] does not apply because Defendants had

actual knowledge of falsity.  ECF No. 65 at 20.  Plaintiffs are wrong.

Defendants' moving papers provided numerous examples of the meaningful cautionary

language that Elevance included when it announced or discussed the Adjusted EPS forecast.  ECF

No. 63 at 23–24.  Plaintiffs attack that language as insufficient because Elevance gave certain

warnings consistently over several years.  ECF No. 65 at 20, 21–22.  Plaintiffs, however, ignore

that Elevance provided specific cautionary disclosures tailored to the Medicaid redetermination

process, including that:  (i) the initial increase in revenue arising from the COVID-19-driven

suspension was temporary in nature; (ii) the resumption of the redetermination process had been

ordered by Congress; (iii) the resumption of the determination process was likely to result in a

significant loss in Medicaid customers; and (iv) Elevance might fail to accurately predict costs in

its Medicaid business.  ECF No. 62-6 at 8; ECF No. 62-5 at 6.

Plaintiffs do not make any unique arguments with respect to Prong 3 but merely incorporate

their scienter arguments.  The Amended Complaint, however, fails to sufficiently allege that

Defendants had actual knowledge that the alleged false statements were false when made.  *See*

ECF No. 63 at 33–36; Section II.A., *infra* at 11–13.  In addition, Plaintiffs' argument that

---

[2]    As described in Defendants' moving papers, Prong 1 of the Reform Act protects forward-looking statements accompanied by cautionary language, while Prong 3 of the Reform Act protects forward-looking statements that the speaker did not actually know were false at the time.  *See* ECF No. 63 at 22–23.

7

"allegations of actual knowledge for falsity purposes is subject to the lenient 'plausibility' standard" is wrong.  ECF No. 65 at 23 (citing *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 549, 880 (N.D. Cal. 2023)).  Plaintiffs' own citation holds that actual knowledge must still be plead with particularity.  *DocuSign*, 669 F. Supp. 3d at 880.  Moreover, the discussion in *Weston* refers to *Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*, 63 F.4th 747 (9th Cir. 2023), which merely confirms that the combined falsity/scienter analyses from cases decided more than 20 years ago were abrogated by *Tellabs* and *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011).  Subsequent to those cases, courts in the Seventh Circuit have found that where there are "deficiencies of Plaintiff's scienter pleadings [then] Plaintiff has clearly failed to create a strong inference of actual knowledge on the part of Defendants as required for forward-looking statements pursuant to the PSLRA."  *See*, *e.g.*, *Wellpoint, Inc.*, 740 F. Supp. 2d at 1012.

Further, Plaintiffs ignore that, unlike the "strong inference" standard for scienter, recklessness is insufficient to demonstrate "actual knowledge" for the Reform Act's safe harbor.  *See City of Livonia Emps.' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*, 711 F.3d 754, 756 (7th Cir. 2013) (the Reform Act "requires a plaintiff who is complaining about 'forward-looking' statements – predictions or speculations about the future – to prove 'actual knowledge' of falsity on the part of defendants, not merely reckless indifference to the danger that a statement is false.").

### B.    The Opposition Provides No Basis for Challenging Defendants' Opinion Statements and Corporate Puffery.

Defendants established in their moving papers that many of the statements that the Amended Complaint alleges to be false are inactionable opinions or puffery.  In response, Plaintiffs argue (1) that certain statements were not opinions because they "contain no language that qualify them as statements of opinion," (2) that certain opinions "contain embedded false facts that fall under the *Omnicare* exception," and (3) Defendants' statements were not puffery because they

8

"contained sufficient objective verifiable facts."  ECF No. 65 at 24, 25–26.  These arguments are contrary to the law and/or Plaintiffs' own allegations.

**First**, Plaintiffs' argument that the statements Defendants identified as opinions "contain no language that qualify them as statements of opinions" is disingenuous because, in the examples Plaintiffs give, Plaintiffs identify different portions of the statements than those that Defendants argued were opinions or remove the pertinent language entirely.  *Compare*, *e.g.*, ECF No. 63 at 26 (citing paragraph 107 and arguing that "we believe that about 90% of our members have had their eligibility redetermined" is a protected opinion) *with* ECF No. 65 at 24 (citing paragraph 107 and arguing that "our Medicaid business is actually tracking very much in line with our expectations" contains no opinion language).  Nowhere does the Opposition explain why the statements that Defendants identify in their moving papers are not protected opinions.  ECF No. 63 at 25.

Plaintiffs' mischaracterizations again highlight the insufficiency of the Amended Complaint:  paragraph 107 quotes four different sentences, portions of which are emphasized, from Ms. Norwood's answer to an analyst question.  ECF No. 60 at 42–43, ¶ 107.  But Ms. Norwood's answer contained **fourteen** sentences:

> [W]e're at a point where our Medicaid business is actually tracking very much in line with our expectations . . . we believe that about 90% of our members have had their eligibility redetermined.  So as we go through the next few months, you certainly see this tapering down as we really wrap up the unwinding process as we get through June.  One of the things I want to make sure you understand, the downward trend in membership in the first quarter resulted not just from redeterminations, but footprint changes as well.  So it's really the cumulative impact of those two things in terms of the first quarter.  When we think about the work that we will continue to do is we will continue to outreach to Medicaid members.
>
> Many members who have lost their membership at this point, did that as a result of really procedural reasons.  So the team will continue to be very aggressive around continuing the outreach that's been going on, and we're really proud of the work that we continue to do to really reach out to over 4.5 million people . . . to make sure that individuals who are truly eligible for Medicaid have access to Medicaid and if not, are able to transition to

9

> an exchange product and continue coverage.  In terms of where we are today with respect to the acuity and mix of that membership, the acuity is in line with what we expected.
>
> . . . [A]t this point, we have visibility into 75% of our Medicaid rates and premiums for 2024.  The vast majority of those are in line with our expectations and are actuarially sound.  As you know, we have ongoing conversations with our state partners as we go throughout this process and we expect those rates to continue to be actuarially sound.  So we're going to continue to work with our state partners.  We're going to continue the efficacy with our members in terms of making sure they have access to care and coverage, and we're going to make sure that we go through this process with a lot of discipline and rigor, understand the mix of our membership and the leverage versus [payers] as we go through this process.

ECF No. 62-15 at 11.  Ms. Norwood's full answer shows that she is expressing her opinions – and providing the basis for those opinions – about the impact of the Medicaid determination process (as well as Elevance's future plans in response to the redetermination process).

**Second**, Plaintiffs fail to identify embedded facts that are allegedly false and render Defendants' opinions misleading.  Plaintiffs identify two purportedly false facts embedded within Elevance's opinion statements:  (1) "that Elevance's rates were in fact actuarially sound" and (2) "that Elevance was actually meeting its guidance for Medicaid."  ECF No. 65 at 24.  Plaintiffs do not bother to explain which allegations in the Amended Complaint show that those facts were false, nor could they.  With respect to "actuarially sound" rates, Plaintiffs rely elsewhere on the FE allegations, but as Defendants explained in their moving papers and further discuss below, the FE allegations are not credible.  *See* ECF No. 63 at 33–36; *see also* Section II.A., *infra*, at 11–13.  Particularly relevant, certain FEs allege that Elevance had unreliable Medicaid data (FE-9, FE-10, FE-11, and FE-12), but without the particularity mandated by the Reform Act that the Company did not utilize actuarially sound processes when negotiating Medicaid rates with the states.[3]

---

[3]    The other eight FEs contradict FE-9, FE-10, FE-11, and FE-12 and allege that the Company maintained accurate Medicaid data.  ECF No. 60 at 19, 25–26, 27, ¶¶ 39, 56–57, 61.

10

Moreover, none of the FEs allege that he or she spoke with any Defendants concerning any data integrity issues. If Defendants were unaware of the purportedly false embedded facts, their opinions remain protected. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185–86 (2015).

**Third**, Plaintiffs again ignore the statements Defendants identify as puffery and instead pick and choose their own statements to address. ECF No. 65 at 25–26. Statements about how Defendants "feel" or their level of "confidence" are quintessential puffery. *See* ECF No. 63 at 27.

## II. THE OPPOSITION DOES NOT IDENTIFY A STRONG INFERENCE OF SCIENTER.

### A. The Amended Complaint Does Not Offer Facts Sufficient to Show Actual Knowledge or Recklessness.

In the Opposition, Plaintiffs rely entirely on FE allegations to argue that the Amended Complaint pleads that the Individual Defendants had actual knowledge or were reckless in not knowing the impact of the Medicaid redetermination process on Elevance's financials. ECF No. 65 at 27–29. This argument fails at every turn: Plaintiffs' FEs are unreliable, do not say what Plaintiffs say they say, and add nothing beyond what Elevance itself disclosed to the market.

Plaintiffs attempt to defend the credibility of their FEs in what amounts to a single page of conclusory statements, *id.* at 30–31, but fail to remedy the fatal flaws Defendants identified. *See* ECF No. 63 at 34–35.[4] Because Plaintiffs' FE allegations are unreliable, they must be disregarded. *See Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 756, 756–57 (7th Cir. 2007).[5] The Opposition

---

[4]   Defendants' moving papers argued that all FE allegations should be ignored both because they are irrelevant and lack the required indicia of reliability. ECF No. 63 at 34–35. FE-13 and FE-14 were not discussed as examples as it is clear from the total of three sentences dedicated to FE-13 and FE-14 that there is no basis alleged for either to know that employees were fired because they raised concerns with data issues. ECF No. 60 at 34, ¶ 83.

[5]   Plaintiffs' citation to *Phoenix Insurance Co. v. ATI Physical Therapy, Inc.* to argue that the Seventh Circuit no longer disfavors confidential witness allegations is misplaced. 690 F. Supp. 3d 862 (N.D. Ill. 2023); *see* ECF No. 63 at 33–36. That case merely confirms that the Seventh Circuit "has cautioned lower courts of the difficulty of assessing allegations based on anonymous sources," that the allegations should be "discounted, though not ignored," and that confidential witness allegations must be analyzed on a "case-by-case" basis to determine if they are sufficient.

11

confirms that Plaintiffs' **only** basis to argue actual knowledge or recklessness is those FE allegations; thus, the Amended Complaint fails to plead actual knowledge or recklessness.

Even if the FE allegations are considered, they do not establish actual knowledge or recklessness. Plaintiffs argue that Defendants knew Elevance's expenses were rising, that the Company was losing more Medicaid members than anticipated, and that the acuity mix of the Medicaid population was shifting toward members who used more services. ECF No. 65 at 27–28. But Elevance **disclosed** that its expenses had increased, **disclosed** its plan to re-enroll former Medicaid members into other Elevance products, **disclosed** that it was unsuccessful in re-enrolling many former Medicaid members, and **disclosed** the "acuity mix shift dynamic" in Medicaid. *See* ECF No. 62-12 at 3; ECF No. 62-16 at 7–8; ECF No. 62-14 at 6, 7; ECF No. 62-15 at 7. Plaintiffs cannot plead scienter by citing publicly disclosed facts.[6]

Plaintiffs' final argument is that the FE allegations sufficiently allege that the Individual Defendants "knew or recklessly disregarded severe deficiencies in Elevance's Medicaid data." ECF No. 65 at 28. But the FE allegations (if credited) do not show that the Individual Defendants **knew** that Elevance's Adjusted EPS Forecast was unachievable merely because Elevance's Medicaid data suffered from issues. The Amended Complaint fails to allege that any of the FEs worked in financial planning or analysis or on the preparation of the Adjusted EPS forecast. Indeed, the Opposition contains no response to Defendants' argument that the Amended Complaint fails to allege that any FE worked for or spoke to any of the Individual Defendants. As such, no FE offers any allegations regarding how the allegedly deficient Medicaid data translated into the

---

[6]    *Fresno County Employees' Retirement Association v. comScore, Inc.*, 268 F. Supp. 3d 526 (S.D.N.Y. 2017) does not support Plaintiffs' argument. ECF No. 65 at 30 (citing *id.* at , 551–52). In *comScore*, the Southern District of New York found that internal control deficiencies identified by an internal investigation contributed to scienter, including "concerns about tone at the top; errors in judgment identified with respect to issues reviewed; information not having been provided to the Company's accounting group and its external auditors; and the sufficiency of public disclosures made by the Company about certain performance metrics." *Id.* These factors are not present here.

12

Adjusted EPS forecast.  The absence of this allegation is fatal to Plaintiffs' scienter claim.

## B.      Plaintiffs Cannot Rely on the Core Operations Doctrine.

Plaintiffs argue a wildly overbroad version of the core operations theory.  According to Plaintiffs, anything that makes up a significant part of a company's revenue and is discussed on earnings calls is a "core operation."  This is not the law.  *Das v. Rio Tinto plc*, 332 F. Supp. 3d 786, 816 (S.D.N.Y. 2018) ("Core operations 'include matters critical to the long[-]term viability of the company and events affecting a significant source of income,'" but "[t]he doctrine 'typically applies only where the operation in question constitute[s] nearly all of a company's business.'").

## C.      The Opposition Does Not Identify Suspicious Stock Sales.

Defendants' moving papers explained in detail why the stock sales by Ms. Boudreaux and Ms. Norwood were not indicative of scienter.  ECF No. 63 at 31–35.  In the Opposition, Plaintiffs quibble at the margins but in no way contest the following facts:

- Ms. Boudreaux traded pursuant to a 10b5-1 trading plan entered into three and six months before the alleged corrective disclosures;

- Ms. Boudreaux retained 79% of her holdings excluding stock options and over 90% of her holdings including stock options;

- Ms. Norwood sold shares three and six months before the alleged corrective disclosures and just five days after the first alleged false statement;

- Ms. Norwood sold less than a third of her holdings excluding stock options and less than a quarter of her holdings including stock options; and

- Ms. Norwood did not sell anywhere near the Class Period-high price.

*See* ECF No. 65 at 34–35.

In an attempt to paint Ms. Boudreaux's and Ms. Norwood's trades as suspicious, Plaintiffs argue that (1) the amount Ms. Boudreaux sold is suspicious; (2) Ms. Boudreaux's 10b5-1 plan is "not a legitimate defense to the insider selling" because it was entered into "one day after the first false statement that started the Class Period;" (3) the timing of the sales is suspicious even though

13

they were made months before the corrective disclosures; and (4) it is irrelevant that Ms. Norwood sold below the Class Period high stock price. *See id.* at 33–34. These arguments fail.

**First**, Plaintiffs cite a single case to support their argument that a sale of a small percentage of an insider's stock holdings can be found to be suspicious. *See id.* at 33–34 (citing *Fryman v. Atlas Fin. Holdings, Inc.*, No. 18-cv-01640-FUV, 2022 WL 1136577, at \*29–30 (N.D. Ill. Apr. 18, 2022)). In *Atlas Financial*, however, the Court explained that it found the stock sales of two insiders to be "sufficiently unusual to support an inference of scienter" due to numerous factors, including: (1) the stock sales occurred when Atlas's stock "was near its Class Period high"; (2) the stock sales occurred after a state regulatory order found issues with Atlas's reserve; (3) the defendants engaged in multiple trades; and (4) at least three other non-defendant insiders "in the know" sold between 24% and 25% of their holdings. *Id.* None of those factors are present here.

**Second**, Plaintiffs incorrectly assert that Ms. Boudreaux's Rule 10b5-1 plan is irrelevant because it was entered into one day into the Class Period. As Defendants pointed out in their moving papers, April 19, 2024 was the first day that Ms. Boudreaux could execute a 10b5-1 plan following the announcement of Elevance's earnings on April 18, 2024 and provided for stock sales 90 days later, after the mandatory cooling off period. ECF No. 63 at 30. In both cases that Plaintiffs cite, the Rule 10b5-1 trading plans were entered into well after the start of the alleged class period, not one day after. *See Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010) (plans adopted one month into class period and provided for sales as soon as the next day);[7] *Van Noppen v. InnerWorkings, Inc.*, 136 F. Supp. 3d 922 (N.D. Ill. 2015) (noting that insider "entered

---

[7]     *See* Consolidated Amended Class Action Complaint, *Freudenberg v. E\*Trade Fin. Corp.*, 07-cv-08538-JPO-MHD (S.D.N.Y. filed Jan. 20, 2009), ECF No. 68; Motion to Dismiss the Consolidated Amended Class Action Complaint, *Freudenberg v. E\*Trade Fin. Corp.*, 07-cv-08538-JPO-MHD (S.D.N.Y. filed Jan. 20, 2009), ECF No. 72.

14

into this trading plan . . . during the middle of the putative class period").[8]  Put simply, it is not a plausible inference that Ms. Boudreaux adopted a 10b5-1 plan in April 2024 to sell stock because she somehow knew that Elevance was going to lower the Adjusted EPS forecast six months later.

**Third**, Plaintiffs cite inapposite cases in support of their broad statement that "[s]ales months before corrective disclosures are suspicious when defendants were aware of bad, undisclosed news at the time."  ECF No. 65 at 34.  For example, as discussed above, the court in *Atlas Financial* relied on numerous factors to determine that the stock sales were suspicious.  *See* Section II.C., *supra*, at 14.  Importantly, the court found relevant that the stock sales were made four months before the corrective disclosure when considered in connection with the facts that (a) the sales were after the issuance of a regulatory report that alerted the company and the insiders to the exact issue that they failed to disclose, (b) the stock sales occurred near a class period high, and (c) the sales occurred while "[d]efendants claimed to be performing their file-by-file review" related to key issues.  *Atlas Fin.*, 2022 WL 1136577, at *29–30.  Here, Plaintiffs offer nothing more than a conclusory allegation that Ms. Boudreaux and Ms. Norwood knew "bad, undisclosed news" at the time of the trades.  ECF No. 65 at 34.

**Finally**, Plaintiffs' assertion that it is "irrelevant" that Ms. Norwood sold below the Class Period high is contradicted by Plaintiffs' own case.  *See id.* at 34 (citing *Atlas Fin.*, 2022 WL 1136577, at *29 (finding the price of an insider stock sale relevant for scienter purposes)).

## CONCLUSION

Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

---

[8]    While the Court in *InnerWorkings* did not give weight to the 10b5-1 trading plan in its scienter analysis, it held that the alleged insider stock sales did not support an inference of scienter because the insider sold less than 25% of his holdings, was not alleged to have made any profit (as opposed to receiving proceeds from the sale), and no other insiders were alleged to have sold stock.  *InnerWorkings*, 136 F. Supp. 3d at 944.

Dated: January 16, 2025

**HOGAN LOVELLS US LLP**

By: */s/ William M. Regan*

William M. Regan (admitted *pro hac vice*)
Allison M. Wuertz (admitted *pro hac vice*)
Jacey L. Gottlieb (admitted *pro hac vice*)
Mickaela Fouad (admitted *pro hac vice*)
390 Madison Avenue
New York, New York 10017
Tel: (212) 918-3000
Fax: (212) 918-3100
william.regan@hoganlovells.com
allison.wuertz@hoganlovells.com
jacey.gottlieb@hoganlovells.com
mickaela.fouad@hoganlovells.com

**FROST BROWN TODD LLP**

Kandi Kilkelly Hidde (#18033-49)
Darren A. Craig (#25534-49)
111 Monument Circle, Suite 4500
P.O. Box 44961
Indianapolis, IN 46244-0961
(317) 237-3800 (p)
(317) 237-3900 (f)
khidde@fbtlaw.com
dcraig@fbtlaw.com

*Attorneys for Defendants*